**Celia GUMBS and James Gumbs**

v.

**PUEBLO INTERNATIONAL, INC. d/b/a Pueblo Supermarkets.**

**Appeal of PUEBLO INTERNATIONAL, INC.**

Nos. 86–3047, 86–3285.

United States Court of Appeals, Third Circuit.

Argued April 27, 1987.

Decided July 17, 1987.

Wilfredo A. Geigel (argued), Frederick Owen Ferrand, Christiansted, St. Croix, V.I., for appellant.

Ethel Carr Hunter Mitchell (argued), St. Thomas, V.I., for appellees.

Before SEITZ, HIGGINBOTHAM, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents the unfortunately increasingly familiar scenario in the Virgin Islands of an enormous jury award apparently far in excess of the injuries suffered

by the plaintiff. In this action for damages for injuries suffered by the plaintiff when she slipped on spilled oil in the defendant's supermarket, the district court denied the defendant's motion for judgment notwithstanding the verdict, but, finding the jury's award shocking to the judicial conscience, ordered a remittitur. The defendant now appeals from the judgment both with respect to liability, based on the district court's failure to give a requested jury instruction and on an asserted impropriety in the plaintiffs' counsel's closing argument, and with respect to the amount of the reduced award. Because we find no reversible error respecting the determination of liability, we will affirm that portion of the district court's opinion. As we find the award even as remitted far beyond the outermost limits of a reasonable verdict, however, we will return the case to the district court for a new trial on the amount of damages unless the plaintiff elects to file a remittitur as herein directed.

## I.

A bottle of cooking oil broke in a checkout lane at a supermarket owned by defendant Pueblo International, Inc. (Pueblo). A janitor spread cornmeal over the oil, but no one blocked off the lane. Within ten minutes, Celia Gumbs, a shopper, slipped on the oil and fell, spreadeagled, to the floor, and fell again repeatedly trying to get up.

Gumbs felt immediate pain, which has continued to be present, and which will bother her intermittently for the rest of her life. She incurred medical expenses, but proved no future expenses, although surgery may some day be necessary. Gumbs was not hospitalized nor did she miss even a day of work. Despite her injury, she climbed twenty-five steps to her office twice every working day.

Gumbs testified that after the fall, she found sexual relations too painful for her, and she had difficulty performing household chores, which then had to be assumed by her husband, James Gumbs. Both Mr. and Mrs. Gumbs testified their eventual separation was caused by these disruptions

in a previously happy marriage, that she is no longer able to engage in the outdoor activities and dancing she once enjoyed, and she has difficulty playing with her children and taking them places.

At trial, Doctor Sylvia Payne, who had treated Gumbs on several occasions testified that as a result of the accident she had sprained her coccyx, experienced abdominal and vaginal pain, had a back spasm, and may require surgery at some point. She also testified that medication prescribed for the back pain had caused Gumbs to develop an ulcerated stomach. Other expert testimony revealed preexisting or unrelated conditions of scoliosis, osteoarthritis, obesity, and an elevated uric acid level, but no evidence that these had caused any discomfort before the accident. There was conflicting evidence of two herniated discs.

The jury awarded Gumbs $900,000 for past and future pain and suffering, mental anguish, and loss of enjoyment of life. Her medical expenses were also included, but represented only an insignificant part of the award. No award was permitted for economic losses or future medical expenses. The jury also awarded James Gumbs $10,000 for loss of consortium.

Pueblo immediately moved for judgment notwithstanding the verdict or alternatively for a new trial. The district court summarily rejected Pueblo's arguments regarding liability as meritless, but agreed that the jury's award was so unreasonable as to require remittitur. The court stated:

[T]he injuries to Mrs. Gumbs … are not to be denigrated. They … were worthy of a sizable jury award. However, the amount of $900,000 is shocking to the conscience of this Court. It can rightly be said that ultimately a judge's decision on whether he or she is "shocked" by the size of an award depends on personal predilection, and one judge's "shock" level may be substantially higher than another's. Be that as it may, we cannot let this verdict stand.

But we cannot reduce it by remittitur to what we would have given, because that is not the applicable law governing such a situation. Rather, we can only

require reduction to a level that is no longer shocking, which will still be substantial in size. That level is $575,000. *Gumbs v. Pueblo Int'l, Inc.,* No. 1983–95, mem. op. at 5 (D.V.I. Dec. 12, 1985) [Available on WESTLAW–DCT database]. The court ordered Gumbs to remit that portion of the award over $575,000 or to face a new trial. She agreed to the remittitur. The court permitted James Gumbs' award to stand.

## II.

### *Liability*

### A.

### *Pueblo's Requested Jury Instruction*

■ Trial courts have broad discretion regarding jury instructions. This court will not reverse a district court's decision to give or refuse jury instructions unless there has been an abuse of that discretion. *United States v. Fischbach and Moore, Inc.,* 750 F.2d 1183, 1195 (3d Cir.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985).

Pueblo requested a jury instruction regarding the relationship between the length of time a substance is on the floor and negligence by the possessor of land as discussed in *David v. Pueblo Supermarket,* 740 F.2d 230 (3d Cir.1984). The district court declined to give the instruction, explaining that in *David* the issue was whether the defendant had had constructive notice of the dangerous condition, whereas in the present case Pueblo had conceded that it had had actual notice of the spilled oil. The *David* court had expressly stated that it considered the question of time "[a]bsent direct testimony proving actual notice." 740 F.2d at 234, 236.

Pueblo asks us to extend *David* to address a related issue of reasonable response time. The duty of a possessor of land to take reasonable care to remedy or warn of dangerous conditions, *see* Restatement (Second) of Torts § 343(c) (1966), argues Pueblo, inherently gives the possessor of land a reasonable time to respond to the condition before it can be negligent. Some

jurisdictions have apparently taken this position. In *Gaidymowicz v. Winn-Dixie Stores,* 371 So.2d 212 (Fla.Dist.Ct.App. 1979), the court held that one minute of actual notice was insufficient opportunity to correct a spill in the supermarket, and therefore there was no negligence. In *Seganish v. District of Columbia Safeway Stores, Inc.,* 406 F.2d 653 (D.C.Cir.1968), the court said that "negligence can be found in relation to a customer-created hazard only if it is known, or because of its duration it should have been discovered, in time to afford a fair opportunity to remove it." *Id.* at 656 (footnote omitted). *See also All v. Smith's Management Corp.,* 109 Idaho 479, 708 P.2d 884, 886 (1985); *Buttrey Food Stores Div. v. Coulson,* 620 P.2d 549, 553 (Wyo.1980); *Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 494 P.2d 839, 840 (1972).

It seems, however, that even if *David* were thus extended, the jury still properly could have found Pueblo negligent. It is not unreasonable to find that ten minutes is enough time to clean up this type of spill, or at least to close off the aisle until it was cleaned up. We therefore decline to formulate a general rule respecting reasonable response time in every situation, and we hold that the district court did not abuse its discretion in refusing to give Pueblo's requested instruction.

### B.

### *Reference to Ad Damnum Clause in Closing Argument*

Prior to closing arguments, in a side bar discussion, Pueblo asked the court to prohibit references in closing arguments to the specific lump sum damages sought. Judge O'Brien refused, noting that the practice in the Virgin Islands was to allow such references, but adding that he would, as he customarily did, require Gumbs to make any such reference in the opening part of the argument, to allow rebuttal by Pueblo. Counsel for Gumbs informed the jury that plaintiff was asking for the sum of $3 million in damages.

Pueblo admits that the majority of jurisdictions do permit references to *ad damnum* clauses in closing arguments. The Virgin Islands has no specific rule, but has allowed this troublesome practice by custom. This circuit has not decided the question, specifically reserving it in *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir.1979), where the defense counsel had failed to object to the reference.[1]

Pennsylvania and New Jersey both take the minority position. *See Murray v. Fairbanks Morse, supra* at 152 n. 5; *Botta v. Brenner*, 26 N.J. 82, 138 A.2d 713 (1958); *Joyce v. Smith*, 269 Pa. 439, 112 A. 549 (1921). This position is based on the theory that *ad damnum* clauses tend to be too exaggerated to be useful guides for juries and are aimed to substitute prejudice for reason and passion for an intelligent analysis of the evidence. Furthermore, they are confusing to the general public as well. Pueblo argues that Virgin Islands jurors similarly would be confused. Pueblo contends that such a rule as Pennsylvania and New Jersey have adopted can help control the exorbitant awards currently common, and we agree. Even where references are not permitted, however, prejudice is not presumed, and reversal is not automatic. *See* Annotation, *Propriety and Prejudicial Effect of Reference by Plaintiff's Counsel, In Jury Trial of Personal Injuries or Death Action, to Amount Claimed or Expected by His Client*, 14 A.L.R.3d 541, 544 (1967). An instruction or admonishment to the jury by the court can correct the defect. *Stassun v. Chapin*, 324 Pa. 125, 188 A. 111 (1936); *but see Carothers v. Pittsburgh Rys.*, 229 Pa. 558, 79 A. 134 (1911).

■ In the present case, plaintiff's counsel made only one brief reference to the amount requested and the judge reminded the jury that the attorneys' statements were not evidence and that they were to consider only evidence. In light of the district court's remittitur and our disposition of the damage issue, we do not decide today whether or not references to *ad damnum* clauses are permissible in the federal courts of this circuit generally or of the Virgin Islands in particular. We hold that the district court's determination that the reference, whether or not permissible, was not sufficiently prejudicial to warrant reversal.

### III.

#### Damages

■ Pueblo argues that even as reduced from $900,000 to $575,000 the award to compensate Gumbs for her pain and suffering, mental anguish, loss of enjoyment of life, and past medical expenses was clearly excessive, and that therefore the award should be further remitted. This court has noted that our review of this question is severely limited: we may disturb the district court's determination with respect to a remittitur only for abuse of discretion, and reverse and grant a new trial "only if the verdict is 'so grossly excessive as to shock the judicial conscience.'" *Edynak v. Atlantic Shipping, Inc.*, 562 F.2d 215, 225–26 (3d Cir.1977) (quoting *Russell v. Monongahela Ry.*, 262 F.2d 349, 352 (3d Cir. 1958)), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). In the instant case, our review requires additional deference to the district court since it already granted a remittitur.

In *Edynak*, the parties stipulated that the plaintiff's medical expenses totalled $12,746.90, and his wage loss was $13,669.19. The balance of the jury's award, $273,500 was for loss of earning capacity and for pain and suffering. We recognized that the award for loss of earning capacity, pain, and suffering was quite high and had we been the district judge, we might have found it excessive. On the facts, however, we could not say that it was contrary to all reason and that the award shocked the

---

1. We note that V.I.Code tit. 5 § 5, signed into law on June 20, 1986, prohibits the pleading of a specific sum of damages sought. It also notes, however, that "[n]othing in this Section shall be construed as preventing a party from asking for a specific amount of damages at trial." Thus, even if the statute were retroactively applicable to the present case, as Pueblo concedes it is not, it refers only to the *ad damnum* pleading and not to the closing argument. It is therefore irrelevant to this appeal.

conscience of the court. Edynak suffered a gruesome permanent injury to his hand, requiring surgical operations to restore its partial use. His permanent disability limited his work horizon and prospects for promotion. His hand required extensive grafting and had to be sewn to his abdomen for many days. Nine surgical procedures over three years were necessary to reconstruct the hand which remained permanently disfigured and of limited use. 562 F.2d at 226–27.

Later, this court followed *Edynak* in *Murray v. Fairbanks Morse*, 610 F.2d 149 (3rd Cir.1979):

> We cannot perceive an abuse of discretion merely because we would have found the damages to be considerably less than those awarded and would have set them aside had we been the district court. [*Edynak*] at 226; *Dagnello v. Long Island Rail Road*, 289 F.2d 797, 806 (2d Cir.1961). The trial judge is in the best position to evaluate the evidence and assess whether the jury's verdict is rationally based. *Edynak, supra*, 562 F.2d at 226–27 *citing Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 409 F.2d 145, 148, *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). Nevertheless, there is a limit beyond which an appellate court must reverse an award as grossly excessive. The United States Supreme Court has cautioned that we must "make a detailed appraisal of the evidence bearing on damages" in deciding whether a verdict is excessive. *Grunenthal v. Long Island Rail Road Co.*, 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968). We must therefore turn to the record to see if the district court was correct in concluding that the jury's award was not the product of irrational behavior.

610 F.2d at 153. *See also David v. Pueblo Supermarket of St. Thomas, Inc., supra, Walther v. Pueblo Supermarket of St. Thomas, Inc.*, 433 F.2d 935, 936 (3d Cir. 1970).

In *Walters v. Mintec/International*, 758 F.2d 73 (3d Cir.1985), this court did vacate an award as excessive. Acknowledging the *Russell-Edynak-Murray* line of cases, we concluded that there was "no rational basis in the present record for the amount of the jury verdicts." *Id.* at 81. The court noted "that a district court should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds." *Id.* at 82. Most recently, in *Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030 (3d Cir.1987), we noted "an increasing appellate trend to review the merits of a damage award, even though the scope of our review is limited." *Id.* at 1041. In *Williams*, this court ordered a remittitur of the pain and suffering portion of an award from $317,000 to $100,000.

The Fifth Circuit has adopted a "maximum recovery rule" analysis for excessive damages claims, in *Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir.1970), *appeal after remand*, 456 F.2d 180, *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). Under that rule, a trial court fixing a remittitur may not reduce the award to less than the largest verdict that could be allowed without requiring a new trial. *Id.* at 1046–47. Only a reduction to the *maximum* amount "which the jury *could* reasonably find" has any reasonable claim of being consistent with the Seventh Amendment. *Id.* at 1046–47.

The district court in the present case does appear to have been following the *Gorsalitz* approach. The court stated that

> the injuries to Mrs. Gumbs were ... worthy of a sizeable jury award. However, the amount of $900,000 is shocking to the conscience of this Court.... [W]e cannot let this verdict stand.

> But we cannot reduce it by remittitur to what we would have given, because that is not the applicable law governing such a situation. Rather, we can only require reduction to a level that is no longer shocking, which will still be substantial in size. That level is $575,000.

The court did not explain how it arrived at that figure, however. We must therefore review the evidence in order to determine whether the district court exceeded the bounds of its discretion in choosing

$575,000 as the proper level. In doing so, we must give the benefit of every doubt to the judgment of the trial judge.

Gumbs contends that her injury is similar to that suffered by the plaintiff in *Murray v. Fairbanks Morse, supra, aff'g Murray v. Beloit Power Systems, Inc.*, 79 F.R.D. 590 (D.V.I.1978). In that case, the district court declined to order a remittitur of an award of $1,200,000 for pain and suffering, mental anguish, and loss of enjoyment of life. Although it is true that Murray, like Gumbs, also claimed herniated disks, sexual dysfunction, ongoing pain, and the possibility of future medical problems, he also produced objective evidence of serious permanent injuries. Murray injured his cauda equina such that his prognosis included impotency, removal of the prostate gland, possibly fatal kidney damages, and confinement to a wheelchair. He had undergone two serious operations and wore a genital clamp to control his bladder. He could not stand upright or perform any type of work. The district court in the present case noted that Gumbs' injuries are far less severe, and we agree. Gumbs testified that she had at first been unable to get out of bed and dress unassisted. Although she was able to climb the steps to her office, she did so with great pain. She could not do housework without difficulty. She testified that she was unable to play with her children and take them on outings to the extent that she had in the past, that her sexual relationship with her husband had suffered, and that the marriage eventually ended.

We recognize that, as the jury found and the district court acknowledged, Gumbs' injuries were not trivial, and we do not mean to make light of either her physical suffering or the consequent changes in her life. Although we do not rely on verdicts in other cases to determine whether the verdict in this case is excessive, the rationale of the court in determining the excessiveness of verdicts with comparable injuries offers us some guidelines. Most recently, in *Williams v. Martin Marietta Alumina*, 817 F.2d 1030 (3d Cir.1987), the plaintiff had fallen off a roof and claimed chronic pain, sexual dysfunction, and difficulty sitting for long periods. We held that the jury's award of about $317,000 for pain and suffering was excessive, and that $100,000 was the maximum permissible amount.

In *Williams*, we referred to several other cases in which awards had been held grossly excessive. In *O'Gee v. Dobbs Houses, Inc.*, 570 F.2d 1084 (2d Cir.1978), the plaintiff, a twenty-three year old airline flight attendant, underwent surgery that left permanent scars, was unable to work for over a year, lost $10,000 in wages, returned to a less desirable job, and was left with pain, numbness, and restrictions on her activities. The Second Circuit reduced her award from $170,000 to $85,000. The other cases cited in *Williams* reached similar results.

As we indicated in *Williams*, this court takes note of the increasing willingness of the appellate courts to review damages awards. There is no doubt that this trend is a response to the increasingly outrageous amounts demanded by plaintiffs and awarded by juries. A jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket. There must be a rational relationship between the specific injury sustained and the amount awarded. In the present case, we do not believe that $575,000 is within even the outermost limits of the range of reasonable and acceptable verdicts for the injury the plaintiff sustained and, therefore, excessive as a matter of law.[2]

We therefore turn to an analysis of the evidence pertaining to plaintiff's injury. Dr. Sylvia Payne, a physician specializing

---

**2.** "The power and duty ... of the court of appeals to relieve against excessiveness in verdicts does not extend to cases where the verdict is excessive merely as a matter of fact. Limited as it is by the Seventh Amendment, its power and duty extend only to cases in which the verdict is excessive as a matter of law, that is, so gross or inordinate in amount as to be contrary to right reason." *Sunray Oil Corp. v. Allbritton*, 188 F.2d 751, 751 (5th Cir.1951) (per curiam).

in physical medicine, testified for Gumbs. She stated that Gumbs had sprained her coccyx, an injury that heals very slowly, leaving scar tissue and residual pain. There was also a back spasm, preventing full flexibility of the spine. The analgesic Gumbs was given for her back pain caused a stomach inflammation. A tomographic examination of her spine on November 18, 1983, by Dr. Torres Reyes showed evidence of moderate osteoarthritic changes, and herniation of the intervertebral disk at the L5–S1 and L4–L5 levels. Dr. Payne, who saw her for two years preceding, did not diagnose any herniated disk. Dr. Payne also conceded that obesity is one of the factors contributing to back problems and that an osteoarthritic condition (pre-existing here) can turn into a painful condition without trauma.

Dr. Herman Mercado, a neurosurgeon in Puerto Rico, to whom Dr. Payne referred Gumbs, found all her neurological functions negative, and diagnosed her condition as a low back syndrome with some post-traumatic coccyx involvement. He did not find any disk impairment that required surgery.

Pueblo offered the testimony of Dr. Jorge Diaz, an orthopedic surgeon. He examined Gumbs in October 1985. At that time she complained of left paravertebral pain in the lumbar area, which increased the longer she stood up. Dr. Diaz found full ninety degree flexion without pain and ten degrees extension with pain. She complained of radiating pain before but not during the examination. A straight-leg raise test yielded no pain when her leg was lifted to hip level, an indication that there was no sciatica or herniated disk. Dr. Diaz also testified that the narrowing in the vertebral area shown on an X-ray of Gumbs taken a few days after the accident could not have come as a result of the fall, as this narrowing is a slow, degenerative process, and that the pain in her abdominal or genital area was unrelated to the L–5 disk. Dr. Diaz disagreed with the finding of a herniated disk and agreed with Dr. Mercado that there were "no entrapment

signs or neural deficit which are a main factor to come to a diagnosis."

On review, this court may not require a reduction in the amount of the verdict to less than the "maximum recovery" that does not shock the judicial conscience. See Gorsalitz v. Olin Mathieson Chemical Corp., 429 F.2d at 1046–47. The determination of that amount may not be precisely calculated. The jury in this case returned a general verdict which does not distinguish between the components of the total damages awarded and this places us at a disadvantage. We are, however, able to break out the medical expenses which amount to $2892.75 and we note the evidence of taxi and airflight bills incurred in the course of diagnosis and treatment amount to $1,224. The remaining components of the award dealt with pain and suffering, mental anguish, and loss of enjoyment of life. We have already discussed the evidence pertaining to pain, suffering, and mental anguish.

The component relating to loss of enjoyment of life in some respects duplicates the component of pain and suffering, but also represents a deprivation of the opportunity to participate in normal social, athletic, or recreational activities in which a person without Gumbs' injury could engage. See Petition of United States Steel Corp., 479 F.2d 489, 503 (6th Cir.), cert. denied, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). Included in this component may also be such allowance as the jury saw fit for the effect, if any, of plaintiff's injury on her marriage and family life.

The plaintiff obviously led a busy business and family life. She not only enjoyed an accounting practice but operated a secretarial school, maintained a home for her husband, five children, and one stepchild. She looked after a sick mother. She also testified that prior to the fall, she engaged in jogging, swimming, tumbling, and tennis with her children. She stated that these activities suffered as a result of her pain. Furthermore, the pain interfered with her sexual relationship with her husband resulting in his drinking to excess and their

ultimate separation.[3] On the other hand, at the time of the accident Gumbs had preexisting scoliosis, an osteoarthritic condition of the spine, and weighed about 240 pounds which even she considered "very heavy" but not a problem.

Upon a careful review of the record and the law relating to analogous injuries, we believe that the maximum recovery without shocking the judicial conscience that a jury reasonably could have awarded the plaintiff for pain and suffering, mental anguish, and loss of enjoyment of life would have been $235,000. In addition, she is entitled to her medical, air travel, and taxi expenses aggregating $4,117.75. Any award in excess of $239,117.75 is inordinate and contrary to law.

Despite Gumbs' description of subjective pain and suffering, and evidence of a torn ligament and back spasm, certain undisputed facts are illuminating. Except for negative x-rays as an outpatient, Gumbs never required hospitalization and she lost no time from work. She did not have to submit to surgery; she suffered no disfigurement. Treatment prescribed for her by Dr. Payne consisted of physical therapy to relieve pain and spasm. Daily, she was able to go to and from her accounting office and climb the twenty-five steps to reach it.

### IV.

Accordingly, we will affirm the district court's order denying Pueblo's motion for a judgment N.O.V. We will, however, vacate the judgment and remand the case to the district court for a new trial on the issue of damages unless Gumbs elects to file a remittitur of the damages in excess of $239,-117.75.

Simple interest shall be awarded from the date of the verdict, November 1, 1985, *see Poleto v. Consolidated Rail Corporation,* 826 F.2d 1270 (3d Cir.1987), at the rate provided by law, together with costs and attorney's fees in the sum of $9,804.25 as allowed by the District Court of the Virgin Islands in its order of December 12, 1985. Each side shall bear its own costs on the appeal to this court.

3. Mr. Gumbs lost his job in April or May 1982 and left the Islands to seek work on the main-

land. In November 1982, the parties entered into a legal separation.