Raquel **RIVERA,** Appellee,

v.

**VIRGIN ISLANDS HOUSING AUTHORITY And Commissioner of Housing, Juan Centeno,** Appellants.

No. 87–3483.

United States Court of Appeals, Third Circuit.

Argued April 21, 1988.

Decided Aug. 12, 1988.

Rehearing and Rehearing In Banc Denied Sept. 14, 1988.

Islands. The jury found the defendant/appellant, Virgin Islands Housing Authority [The Authority], liable to her for lower back injuries sustained in a fall caused by the Authority's negligent maintenance of an apartment which Rivera leased from the Authority and in which she lived. The principal question presented by the Authority's appeal from the final judgment of the district court is whether the verdict is so grossly excessive that it should be set aside. The district court, after a careful review of the record, concluded that it should not and denied the Authority's motion for a new trial. For the reasons that follow we conclude that the district court did not abuse its discretion in so ruling. We dispose of the Authority's other contentions summarily,[1] and, with one exception, affirm.

Wilfredo A. Geigel (argued), Scott A. Burton, Christiansted, St. Croix, V.I., Adriane J. Dudley, Charlotte Amalie, St. Thomas, V.I., for appellants.

Richard H. Hunter (argued), Isherwood, Hunter & Colianni, Christiansted, St. Croix, V.I., for appellee.

Before SEITZ, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Raquel Rivera, plaintiff and appellee, was awarded a verdict of $250,000.00 by a jury in the District Court of the Virgin

### I.

The accident in question occurred on October 3, 1984, when Rivera slipped on some water that had dropped onto the floor of her apartment from a leak in the ceiling. It is not disputed that Rivera sustained an injury to her lower back as the result of the fall. What is disputed is the extent of Rivera's injury, the amount of pain and disability that it caused, and whether such pain and disability are the result of the October fall or of Rivera's pre-existing medical condition. We therefore focus on these matters in the discussion that follows, viewing the facts in the light most favorable to Rivera as verdict-winner.

The dominant fact in the medical record is the confirmed existence of a central disc herniation at L5 S1. This was disclosed by

---

1. First, we conclude that the district court did not abuse its discretion by declining to grant a Fed.R.Civ.P. 15 motion filed by the Authority one business day prior to jury selection. The Authority had sought leave to amend its answer to plead as an affirmative defense that Rivera was contractually estopped from bringing the action because she did not first resort to the procedural remedies provided by the grievance procedures contained in the lease. Second, although we do not approve the unusual manner in which the district court calculated attorneys' fees for the prevailing plaintiff pursuant to 5 V.I.C. § 541, we conclude that the court did not abuse its discretion in its determination of the *amount* of counsel fee awarded, hence we affirm on this point as well. Third, the court did not go astray in its award of the cost of the Spanish–English translator's attendance at trial. However, in light of our recent decision in *Bernard Heller Foundation v. Lee,* 847 F.2d 83 (3d Cir.1988), we set aside the award of $1,000 for the expert witness fee of Dr. Sylvia Negron de Payne. In *Heller* we held that witness fees in the district court of the Virgin Islands do not exceed the $30 a day limit set by 28 U.S.C. § 1821. *Id.,* at 86–88.

a computerized axial tomographic (CAT) scan performed on Rivera by Dr. Rene Cardona Campos in Santurce, Puerto Rico on December 13, 1984. Rivera's trial expert, Dr. Sylvia Negron de Payne, also performed an electromyogram which revealed additional objective evidence of injury in the form of bilateral S2 radiculopathy. The Authority, which produced no medical evidence at trial, does not attempt to refute this objective evidence of serious injury. Moreover, Dr. Payne's clinical examination of Rivera revealed several neurological abnormalities related to her back injury. Dr. Payne's primary diagnosis of Rivera's condition was a herniated nucleus pulposus at the L5 S1 level, with related S2 nerve root lesions. Dr. Payne also found related cervical and dorsolumbar myositis and left bicipital tendinitis.

Dr. Payne's opinion (and the jury's verdict) was informed by Rivera's testimony that she has been in constant pain since her fall. Her complaints of pain were corroborated by a witness whose pain killers she had frequently borrowed. Rivera testified that since her injury she has been unable to engage in her normal daily activities, including housework and gardening.[2] Rivera is obese and there was evidence that the reduced activity caused by her inability to accomplish normal housework has caused her to experience a substantial weight gain (over 43 pounds since the accident).

Dr. Payne's prognosis was that the usual household chores that Rivera was no longer able to perform since her October 1984 fall would always remain beyond her physical capabilities. She testified that Rivera cannot lift more than 10–15 pounds or stand for prolonged periods. Dr. Payne noted that Rivera had pain radiating from the hip and leg which was aggravated by any activity. Dr. Payne also opined that the injured intervertebral joint will most likely develop degenerative joint changes, and that with age Rivera's symptoms would be seriously exacerbated. Finally, Dr. Payne testified that Rivera's central disc herniation, in conjunction with preex-

isting urological problems, created the risk of a urologic emergency, because the nerves potentially impinged on by the centrally herniated disc go to the bladder. In Dr. Payne's view no surgery is indicated; Rivera's condition is permanent and is likely to worsen.

The Authority contends that the jury award was "not rationally based." Appellant's Br. at 16. Its argument that the medical evidence precluded a finding for the plaintiff is essentially twofold. First, the Authority contends that Rivera's back problems were not caused by the October 1984 accident. Second, it argues that she suffered no significant back pain as the result of the accident.

As to its first contention, the Authority points to the following facts: Rivera has been complaining of back pain since at least 1968; she fell and injured her back previously in 1982 and in March 1984; arthritis had been noted on a hospital record three years before the accident; and Rivera has long-standing urological problems. While the Authority offers no medical evidence that the herniated disc did not result from the October 1984 fall, it refers to Dr. Payne's testimony as "questionable" and intimates that the herniation might have come from the March 1984 fall or otherwise antedated the October 1984 accident. There was indeed evidence before the jury that Rivera had encountered previous back and urological problems. But Dr. Payne, having reviewed the entire medical record dating back to 1971, was quite specific in her testimony that the herniated disc and Rivera's permanent injury resulted from the October 1984 fall and not an earlier fall or any previous difficulty of either orthopedic or urologic nature. Moreover, Rivera and another witness testified that prior to her October 1984 injury her only orthopedic problem was with her shoulders. The foregoing testimony is sufficient to support the jury's obvious rejection of the Authority's contention that Rivera's back problems did not result from the October 1984 accident.

2. Rivera, who is illiterate and is separated from her husband, was unemployed at the time of the accident and looks after her two grandchildren who live with her.

The second aspect of the Authority's medical defense is its contention that Rivera has not suffered significant back pain as a result of the accident. In this regard, the Authority asserts that Rivera has at no time exhibited any clinical signs of the "special kinds of pain or numbness" associated with a herniated disc. Appellant's Brief at 17. The Authority submits that Dr. Payne in fact testified that Rivera exhibited no neurological or clinical signs associated with a herniated disc. It contends that although a herniated disc may have been present, it did not affect the nerves so as to cause any symptoms or pain. These contentions fail, however, in the wake of the testimony to the contrary of both Rivera and Dr. Payne, which the jury was entitled to credit.

In essence, the Authority's medical defense on appeal is a renewed jury argument made to the wrong forum. The jury, based upon sufficient evidence, has rejected the Authority's two-fold medical defense. We therefore proceed to the Authority's legal arguments.

## II.

■ The caselaw governing the setting aside of jury verdicts on the grounds of excessiveness is familiar and may be rescribed briefly. We may disturb the district court's determination with respect to a remittitur only for abuse of discretion. We may reverse and grant a new trial "only if the verdict is 'so grossly excessive as to shock the judicial conscience'." *Gumbs v. Pueblo Int'l., Inc.*, 823 F.2d 768, 771 (3d Cir.1987) (quoting *Edynak v. Atlantic Shipping, Inc.*, 562 F.2d 215, 225–26 (3d Cir.1977); *see also Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1040–41 (3d Cir.1987). A useful statement of the standard (and of our scope of appellate review) is found in *Gumbs:*

> We cannot perceive an abuse of discretion merely because we would have found the damages to be considerably less than those awarded and would have set them aside had we been the district court. [*Edynak*, 562 F.2d] at 226; *Dagnello v. Long Island Rail Road*, 289

F.2d 797, 806 (2d Cir.1961). The trial judge is in the best position to evaluate the evidence and assess whether the jury's verdict is rationally based. *Edynak, supra*, 562 F.2d at 226–27 *citing Taylor v. Washington Terminal Co.*, 133 U.S.App.D.C. 110, 409 F.2d 145, 148, *cert. denied*, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). Nevertheless, there is a limit beyond which an appellate court must reverse an award as grossly excessive. The United States Supreme Court has cautioned that we must "make a detailed appraisal of the evidence bearing on damages" in deciding whether a verdict is excessive. *Grunenthal v. Long Island Rail Road Co.*, 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968). We must therefore turn to the record to see if the district court was correct in concluding that the jury's award was not the product of irrational behavior.

823 F.2d at 772 (citing *Murray v. Fairbanks Morse*, 610 F.2d 149, 153 (3d Cir. 1979)).

In *Williams*, the case primarily relied upon by the Authority, we ordered a remittitur of the pain and suffering portion of the jury award from $317,000 to $100,000. Similarly, in *Gumbs* we ordered a remittitur of the pain and suffering portion of the award from $575,000 (the amount to which the district court had reduced it from the jury's verdict of $900,000) to $235,000. Analogizing Rivera's injuries to those of the plaintiff in *Williams*, the Authority argues that the $100,000 permitted there sets a bench mark for plaintiff's type and degree of injury. The Authority also intimates that *Williams* and *Gumbs*, both of which involved lower back injuries, have established a clear jurisprudential trend favoring remittitur of large verdicts which courts within the Third Circuit must heed.

There are, however, numerous differences between the record in *Williams* and the record in this case. For instance, the CAT scan taken a year after Williams' accident showed no direct or indirect evidence of disc herniation or spinal abnormalities. Nor were there objective signs or neurological deficiencies or active radiculopathy

found. Williams was also able to do much more physically than Rivera. Moreover, the medical evidence as to the limitation on Williams' physical activity revealed much greater capacity than the jury could have found that Rivera possessed on this record.

It would be of little value to extend this opinion by a detailed comparison between the record in this and numerous other cases where a remittitur was granted. Given the evidence summarized above we are satisfied that: (1) as a result of the October, 1984 accident Rivera sustained a herniated disc with neurological involvement, continuous pain, and inability to engage in practically any activity; (2) these injuries are not only permanent but likely to worsen with age; (3) they may cause serious urologic problems; and (4) they cannot be corrected. We therefore cannot say that the district court abused its discretion in refusing to set aside the $250,000 award for pain and suffering.

As we have explained above, it is the obligation of courts reviewing an allegedly excessive jury award to "make a detailed appraisal of the evidence bearing on damages." *Grunenthal v. Long Island Rail Road Co.*, 393 U.S. 156, 159, 89 S.Ct. 331, 333, 21 L.Ed.2d 309 (1968) (citing *Dagnello v. Long Island Rail Road Co.*, 289 F.2d 797 (2d Cir.1961)). While we have done so, we nonetheless stress that the primary responsibility in this important area lies with the district judges.

The judgment of the district court will be affirmed, except that the award of $1,000 expert witness fee, *see supra* note 1, will be reduced to thirty dollars.