230

Kenrick DAVID, by his mother and next of friend Juliette BERKELEY and Juliette Berkeley on her own behalf

v.

PUEBLO SUPERMARKET OF ST. THOMAS.

Appeal of PUEBLO SUPERMARKETS OF ST. THOMAS, INC.

No. 83–3180.

United States Court of Appeals, Third Circuit.

Argued April 23, 1984.

Decided July 24, 1984.

sult of a slip and fall in one of the defendant's supermarkets. The defendant appeals from an adverse jury verdict awarding the plaintiffs, mother and child, compensatory and punitive damages.

The defendant asserts on this appeal that the district court committed reversible error in denying its motion for judgment notwithstanding the verdict or, in the alternative, a new trial because (a) the question of punitive damages submitted to the jury was premised upon an inadmissible and insufficient hearsay statement; (b) evidence as to plaintiff's prior testimony regarding the cause of her injuries was excluded and (c) plaintiffs' negligence claims were submitted to the jury without sufficient evidence. Moreover, the defendant claims that the court abused its discretion in denying its request for a remittitur.

After a careful examination of the entire record, we agree with the defendant that there is insufficient evidence to support the award of punitive damages. Consequently, we will vacate the award of punitive damages. In all other respects, however, we will affirm the judgment of the district court.

Richard H. Hunter, argued, Isherwood, Hunter & Colianni, Christiansted, St. Croix, U.S.V.I., for appellant.

Desmond L. Maynard, argued, Law Offices of Desmond L. Maynard, Soraya Diase, of counsel, Charlotte Amalie, St. Thomas, U.S.V.I., for appellees.

Before SEITZ, Chief Judge, and GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This negligence action was instituted by a business invitee against the owner and operator of a supermarket chain for personal injuries allegedly sustained as a re-

## I.

Plaintiff-appellee, Juliette Berkeley ("Berkeley") initiated this negligence action individually and on behalf of her son, plaintiff-appellee, Kenrick David, seeking damages for personal injuries. Berkeley testified that while grocery shopping on May 1, 1979 at a supermarket owned and operated by Pueblo Supermarkets of St. Thomas, Inc. ("Pueblo Supermarkets"), she slipped and fell on a substance later identified as cottage cheese. At the time of the fall, Berkeley was approximately eight months pregnant and weighed 217 pounds. The evidence presented at trial indicates that, while in the company of Hugh David and a friend, Rosanell Phipps ("Phipps"), Berkeley fell twice, once directly on her stomach.[1] She claimed to have suffered injuries to her back and knee as well as to her

---

1. She testified that she first fell on her back and "When I tried to get up, I fell back down to my stomach." Joint Appendix ("Appendix") at 117–18.

unborn child. Hugh David, the father of Kenrick David, testified that another shopper, Susan Jacobs ("Jacobs"), in the same aisle at the time of Berkeley's fall, stopped and stated that she had informed "them" of the substance on the floor "about an hour and a half ago." Berkeley testified that Susan Jacobs stated she *just* told "them" about the substance while Phipps recalled only that Jacobs told Berkeley "to be careful."

The defense introduced evidence at trial that on May 30, 1979, five days prior to giving birth, Berkeley was involved in an altercation on a bus with one Maude Tonge. In a criminal proceeding on August 17, 1979,[2] arising out of the assault, Berkeley testified that she had been hit in the stomach by Tonge.

On June 4, 1979, Berkeley was admitted to Knud Hansen Memorial Hospital in St. Thomas in active labor. A pelvic examination revealed that the unborn child's left arm had prolapsed into the birth canal and that his shoulder was impacted against Berkeley's pelvic bone, necessitating a caesarean section. Kenrick David was subsequently born with numerous injuries to his upper left extremities, including a bruised and swollen left arm and shoulder, an inability to fully extend his left arm, immobility of his left fingers and a probable fracture of the left elbow joint.

Juliette Berkeley and Kenrick David alleged that their injuries occurred as a result of Berkeley's fall at Pueblo Supermarket. Pueblo Supermarket denied liability on the ground that Kenrick David's injuries were caused either by the assault upon Berkeley five days prior to Kenrick David's birth and/or the medical complications Berkeley experienced during childbirth. An expert medical witness appearing on behalf of the plaintiffs testified that Berkeley's fall at the supermarket was the most probable cause of Kenrick David's injuries. Defendant's medical experts, on the other hand, testified that either the complications during delivery or the assault on the bus caused Kenrick David's injuries.

The jury found for the plaintiffs and awarded Kenrick David $80,000 in compensatory damages and Berkeley $30,000 in compensatory damages. Additionally, the jury awarded each plaintiff $50,000 in punitive damages.

II.

This court must determine "whether, viewing the evidence in the light most favorable to the plaintiff and guided by applicable principles and rules of law, a jury could reasonably have imposed liability" on Pueblo Supermarket. *Rumsey v. Great Atlantic and Pacific Tea Company, Inc.,* 408 F.2d 89, 89–90 (3d Cir.1969) (in banc). The plaintiffs had the burden of establishing negligence on the part of Pueblo Supermarket by a preponderance of the evidence. The plaintiffs had to establish that the store or its agent was negligent in that the supermarket had either direct or constructive *notice* of the foreign substance on the floor as a potentially dangerous condition. Restatement (Second) of Torts § 343 (1965). The plaintiffs attempted to prove notice on the negligence issue as well as on the issue of punitive damages solely by hearsay testimony.

We will therefore address first the *admissibility* of the hearsay statement as an "excited utterance." Assuming *arguendo* that the statement was properly admitted into evidence, we will then consider (a) whether it was sufficient to support liability for negligence and an award of compensatory damages and (b) whether it was sufficient evidence to support an award of punitive damages.

A. *Admissibility of Hearsay Statements-Excited Utterances*

■ Slip and fall cases involving foreign substances on the floors of grocery markets present the plaintiffs with a difficult

---

**2.** Government of the Virgin Islands v. Juliette Berkeley, Territorial Court, Criminal No. 96/1979.

task of proof. The major issues ordinarily involve the following:

(1) Was there a foreign substance on the floor?

(2) What notice, either actual or constructive, did the employees or the management have of this particular condition which involves "an unreasonable risk of harm" to the business invitees?

(3) Absent direct testimony proving actual notice, was the foreign substance on the floor long enough to give management or employees constructive notice of this potential "unreasonable risk of harm"?

*See generally*, Restatement (Second) of Torts § 343 (1965).

Normally there is no problem in establishing the presence of a foreign substance on the floor—the plaintiff can testify as to what he or she observed. However, the issue of *prior* notice to the store, either actual or constructive, of an unreasonable risk of harm is more difficult to establish. A customer does not send an inspection team before walking down the aisles of a store which he or she will visit. Thus, even though one proves the presence of a foreign substance at the time of the fall, the mere presence of the foreign substance does not establish whether it had been there a few seconds, a few minutes, a few hours or even a few days before the accident.[3] Confronted with this dilemma and without direct testimony as to *how long* the cottage cheese had been on the floor, the plaintiffs attempted to fill the evidentiary gap by introducing testimony of what a third party had purportedly stated at the

time of the incident. Hugh David, the father of Kenrick David, testified as follows:

> I went to try to help her up and then Rosanell came and both of us lift her up and right away as we lift her up, there is a young lady said like this, '*I told them to clean it up about two hours ago—an hour and a half ago.*'"

Appendix at 97 (grammatical errors in original; emphasis added). Hugh David said that the "young lady" who had made the critical statement as to what she had told "them ... two hours ago" was Susan Jacobs.

In this case, however, we have a conflict of testimony. Berkeley recollected Jacobs as saying "I just told them about that," and Hugh David remembered her saying she told "them" about it "two hours ago—an hour and a half ago." Rosanell Phipps remembered no such statement; instead, she remembered Jacobs as warning Mrs. Berkeley to "be careful." Assuming *arguendo* the district court was correct in admitting these hearsay statements into evidence for the truth of the matter asserted, it was a question of fact to be decided by the jury as to which version of Jacobs' statement was more credible.[4]

Though the plaintiffs introduced witnesses who testified as to what Susan Jacobs purportedly stated at the time of the incident, the plaintiffs did not call Susan Jacobs to testify nor was any reason given on the record explaining why she was not called. In fact, if one were writing a mystery story about the incident in question, one could entitle it "The Missing Witness—the Case of Admissible Hearsay" with the

---

**3.** This is generally true unless there is something unique about the condition of the foreign substance, *see Rumsey*, 408 F.2d at 90–91.

**4.** The other two references to Susan Jacobs' purported statement were made by Berkeley and her friend, Rosanell Phipps. Berkeley testified: "I was mad. When I fell, Susan [Jacobs] said, 'I just told them about that. I told them the same thing', and I was mad and embarrassed." Appendix at 119–120. The other testimony was from Rosanell Phipps. The trial transcript reads as follows: "My cousin, Susan Jacobs, see when Juliette Berkeley fell. She

said, 'Juliette, be careful.' I didn't see the same thing ... Question: I was asking you whether, at that very moment that Juliette Berkeley fell down, whether Susan Jacobs said anything right at that moment? Answer: No." Appendix at 79–80. Pueblo Supermarket objected on the ground that it was hearsay and the court overruled the objection. Later, Phipps stated "I really ain't sure, but I think I hear Susan Jacobs say something on the floor, she must be careful." Appendix at 82. (grammatical errors in original).

subheading, "What would Susan Jacobs *have* said had she testified in court?"

Unfortunately, the plaintiffs rely on Susan Jacobs' purported statement as the essential link to establish proof of the defendant's negligence. It was the truthfulness of Susan Jacobs' statement that plaintiffs relied on to establish that Pueblo Supermarket was liable "for physical harm caused to [its] invitees" because of a condition—the cottage cheese spilled on the floor—which defendant "knows [of] or by the exercise of reasonable care would discover." Restatement (Second) of Torts § 343 (1965).

Normally, David's testimony as to what Susan Jacobs said in the store would be excluded as hearsay, and Pueblo Supermarket argues that the district court abused its discretion in admitting that hearsay statement under the spontaneous or excited utterance exception to the hearsay rule. Fed.R.Evid. 803(2). Thus, the first issue we face is whether Susan Jacobs' hearsay statement is admissible under the spontaneous utterance exception to the hearsay rule.[5]

 Whether a statement falls within the excited utterance exception to the hearsay rule lies within the discretion of the trial judge. *Kornicki v. Calmar Steamship Corp.*, 460 F.2d 1134, 1138 (3d Cir. 1972). The burden of establishing the facts which qualify a statement as an excited utterance rests with the proponent of the evidence. *Id.*

 In order to meet the requirement of this exception three conditions must be met: (1) a startling occasion, (2) a statement made before time to fabricate, and (3) the statement relates to the circumstances of the occurrence. 6 *Wigmore on Evidence* § 1750 (Chadbourn rev.1976); *See Milwaukee Gear Co. v. Charles Benjamin, Inc.*, 466 F.2d 588, 591 (3d Cir.1972). The availability of the declarant is immaterial.

Fed.R.Evid. 803. Moreover, *the circumstances of the particular incident* in and of themselves can give rise to a "reasonable presumption of spontaneity" of the utterance. *Kornicki*, 460 F.2d at 1138–39.

 Even though he reached the very outer bounds of his permissible discretion and even though as trial judges we may have ruled differently, we hold that the trial judge did not commit reversible error in admitting Susan Jacobs' statement under the excited utterance exception.

We believe that Jacobs' statement fulfilled the aforementioned three requirements. First, Jacobs saw a woman who was eight months pregnant fall directly on her stomach. This would reasonably qualify as a "startling occasion." Second, the substance of her statement was a matter of sensory perception, it was unsolicited and it was made within seconds of the fall. It was therefore reasonable for the trial court to conclude that Jacobs' statement was made before she had time to fabricate. Finally, it is undisputed that Jacobs' statement directly concerned the "circumstance" surrounding the occurrence.

We find that it was not an abuse of discretion for the district court to conclude that the circumstances in this case gave rise to a "reasonable presumption of spontaneity," nor was it an abuse of discretion for the district court to conclude that the declarant was incapable of reasoned reflection. Therefore, we believe that the district court did not err in admitting Jacobs' statement into evidence.

### B. *Negligence*

Having determined that the hearsay statement was admissible for the truth of the matter asserted, the second issue is whether Jacobs' statement was sufficient evidence to satisfy the notice component of this negligence claim.

---

**5.** Federal Rules of Evidence 803(2) provides: The following are not excluded by the hearsay rule, even though the declarant is available as a witness ... (2) Excited utterance. *A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.*
Fed.R.Evid. 803(2) (emphasis added).

It is well settled that a business owner owes a duty to an invitee "to maintain its premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended." *Morris v. Gimbel Brothers, Inc.*, 394 F.2d 143, 145 (3d Cir.1968). A business owner must take "reasonable care to ascertain the actual condition of the premises...." Restatement (Second) of Torts § 343 (1965) comment d.[6]

Jacobs' hearsay statement indicated only that she "told them" about the foreign substance on the floor. No evidence was introduced concerning who Jacobs actually warned. Consequently, we cannot find that Pueblo Supermarket had actual notice. Accordingly, we must determine whether Pueblo Supermarket had constructive notice that the condition of the floor was dangerous as a result of the presence of the foreign substance on the floor. This burden is met by demonstrating that the floor condition had existed for such a length of time that the storeowner, in the exercise of ordinary care, should have been aware of the condition. There is no *direct* testimony whatsoever which establishes *when* the cottage cheese, on which Berkeley allegedly slipped, got on the floor, or how long it had been there before she fell.

Circumstantial evidence that food was left on the floor for an inordinate period of time can be enough to constitute negligence, and it is a question of fact for the jury whether, under all the circumstances, the defective condition of the floor in the store existed long enough so that it would have been discovered with the exercise of reasonable care. *Rumsey*, 408 F.2d at 90–91.

Viewing the evidence in the light most favorable to the party which obtained the verdict below, *Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 769 (3d Cir.1975), we believe that the plaintiffs introduced, through Susan Jacobs' hearsay statement, sufficient circumstantial evidence regarding the length of time—up to two hours—the cottage cheese was on the floor. The facts in this case are somewhat similar to those in *Sanitary Grocery Co. v. Snead*, 90 F.2d 374, 375 (D.C.Cir.), *cert. denied*, 302 U.S. 703, 58 S.Ct. 22, 82 L.Ed. 543 (1937).

*Sanitary Grocery Co.* involved a customer's slip and fall on vegetable debris in a supermarket where the sole evidence used to establish negligence was a hearsay statement admitted as a spontaneous utterance attributed to a clerk. Plaintiff's witness in that case testified: "... after she fell, then one of the boys, the clerks, went and picked her up, and approached her, and helped to pick her up and said 'that has been on the floor *for a couple of hours.*'" *Id.* (emphasis added). Based on this evidence alone, the court determined that the store had constructive notice of the dangerous condition. Similarly, the jury in this case could have reasonably inferred that the cottage cheese was on the floor for an *unreasonably* long period of time.[7]

### C. *Punitive Damages*

Pueblo Supermarket also claims that the district court erred in upholding the jury's award of punitive damages premised on the hearsay statement of Susan Jacobs. Thus,

---

6. The relevant portion of comment d is as follows:

> An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein.

Restatement (Second) of Torts § 343 (1965) comment d.

7. Pueblo Supermarket also challenges the negligence verdict on the ground that plaintiffs failed to prove that the fall was the proximate cause of plaintiffs' injuries. This argument is without merit. Plaintiffs introduced expert medical testimony that the fall was the proximate cause of Kenrick David's injuries. Additionally, Juliette Berkeley offered uncontradicted testimony that after her fall she suffered from back and knee pains. Berkeley also testified regarding the problem she faced raising Kenrick David. The determination of the credibility of these witnesses was a jury function. Restatement (Second) of Torts § 434 (1965).

we must make a "careful analysis of the entire trial record" and examine whether the plaintiffs provided sufficient evidence to support a punitive damage award. *Berroyer v. Hertz*, 672 F.2d 334, 341 (3d Cir. 1982).[8]

We hold that even with Susan Jacobs' hearsay statement admitted, plaintiff established with the most slender reed the negligence required for a verdict awarding compensatory damage.

■ Plaintiffs seek to rely on that same slender reed to also sustain the punitive damage awards. However, although plaintiffs satisfied the burden of proof for compensatory damages, there are additional elements of proof for punitive damage awards. A plaintiff must meet an extremely high burden of proof to establish entitlement to punitive damages. *Wolf by Wolf v. Procter and Gamble Co.*, 555 F.Supp. 613, 618 (D.N.J.1982); *Phillip v. United States Lines Co.*, 240 F.Supp. 992, 994 (E.D.Pa.1965), *aff'd* 355 F.2d 25 (3d Cir. 1966). Moreover, the existence of negligence alone is not sufficient to award punitive damages. In this case Pueblo Supermarket is being sued as a master or a principal, and in order to hold a principal or a master vicariously liable for punitive damages for the actions of an agent, there must be a showing that the principal actually "authorized," "ratified" or "approved" the act. A plaintiff could establish liability for punitive damage if it could be proven that "the agent was unfit and the principal ... was reckless in employing him," or "the agent was employed in a managerial capacity and was acting in the scope of

employment." Restatement (Second) of Torts § 909 (1979).[9]

■ A thorough review of the record in this case indicates that the plaintiffs failed to offer sufficient proof as required under the Restatement (Second) of Torts § 909 (1979).

The principal evidence in this case to support a punitive damage award consists of (a) the fact that cottage cheese was on the floor and (b) the spontaneous utterance of Susan Jacobs concerning the length of time the cottage cheese was on the floor. The statement was put into the record by Hugh David who said that Susan Jacobs exclaimed "I told them to clean it up about two hours ago—an hour and a half ago." However, Berkeley remembered Susan Jacobs saying "I *just* told *them* about *that.*" Appendix at 119–120. (emphasis added). While this evidence is sufficient to support a finding of negligence, without more, it is insufficient to support a finding of punitive damages.

In its opinion, the district court misconstrued the factual circumstances surrounding Jacobs' statement and *incorrectly* referred to Jacobs as an employee of Pueblo Supermarkets. On this basis, the trial court improperly reasoned that if Jacobs was an employee and did tell "them" about the spill, she "would not have reported this to another cashier or a bag boy but rather to a supervisory employee." Appendix at 70–71. But from our reading of the record and the concession of counsel at oral argument, Jacobs was *not* an employee. In fact, Phipps testified that Jacobs was shopping.

**8.** In the absence of local laws to the contrary, the United States Virgin Islands follow the rules of common law as expressed in the Restatements of Law approved by the American Law Institute. 1 V.I.C. tit. 1, § 4. In this case there is no local law and consequently, the Restatement (Second) of Torts § 909 (1979) is applicable to the Virgin Islands. *See Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 772 (3d Cir.1975); *Shackleford v. Puerto Rico International Airlines, Inc.*, 16 V.I. 342, 346–47 (D.V.I. 1979).

**9.** Section 909 provides:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

 (a) the principal or a managerial agent authorized the doing and the manner of the act, or

 (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

 (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

 (d) the principal or a managerial agent of the principal ratified or approved the act.

Moreover, Jacobs never testified and thus did not clear up the ambiguities within her statement. Indeed, no evidence was introduced concerning *who* Jacobs actually warned. Nor did any employee of Pueblo Supermarket testify that Susan Jacobs warned one of them about the cottage cheese. Thus, any theory concerning who she warned would be premised on mere speculation.

Comment b to the Restatement (Second) of Torts § 909 (1979) provides as follows—

b. The rule stated in this Section results from the reasons for awarding punitive damages which make it improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously. It is, however, within the general spirit of the rule to make liable an employer who has recklessly employed or retained a servant or employee who was known to be vicious, if the harm resulted from that characteristic.... Nor is it unjust that a person on whose account another has acted should be responsible for an outrageous act for which he otherwise would not be if, with full knowledge of the act and the way in which it was done, he ratifies it, or, in cases in which he would be liable for the act but not subject to punitive damages, he expresses approval of it.... In these cases, punitive damages are granted primarily because of the principal's own wrongful conduct.

Although there has been no fault on the part of a corporation or other employer, if a person acting in a managerial capacity either does an outrageous act or approves of the act by a subordinate, the imposition of punitive damages upon the employer serves as a deterrent to the employment of unfit persons for important positions.

Restatement (Second) of Torts § 909 (1979).

By any of the above criteria, plaintiff did not establish the elements for punitive damages. Because Jacobs did not specify the persons to whom she spoke, there is no evidence that a "person acting in a managerial capacity" did an outrageous act or approved the act of a subordinate who did an outrageous act.

For these reasons we cannot uphold punitive damages against the principal, Pueblo Supermarkets, for the actions of its agents. Restatement (Second) of Torts § 909 (1979).

III. *Exclusion of Prior Testimony*

Pueblo Supermarket contends that certain prior statements by Berkeley were critical to the jury's evaluation of her credibility and the exclusion of this relevant evidence constituted an abuse of discretion, warranting a new trial.

Pueblo Supermarket sought to introduce evidence of statements made by Juliette Berkeley while under oath in a previous criminal trial resulting from the altercation between Berkeley and Tonge on a bus five days prior to the delivery of Kenrick David. Pueblo Supermarket alleged that Berkeley herself testified that she was hit in the stomach and that these blows caused Kenrick David's deformities. Pueblo Supermarket maintained that the transcript of the criminal trial was lost, and thus sought, alternatively, to introduce the contents of Berkeley's testimony through the testimony of the custodian of the territorial court records. The district court refused to allow this testimony.

It is within the sound discretion of a trial judge to exclude relevant evidence on the grounds of "confusion of the issues" and "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 803; Saltzburg and Redden, *Federal Rules of Evidence Manual* (3d Ed.) at 101–09; *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 636 (3d Cir.1977).

The district court allowed Pueblo Supermarket to call two witnesses who testified as to the incident on the bus. One of these witnesses was so incredible that, according to the trial judge, she evoked laughter from the jury, thus forcing the judge to reprimand them. Berkeley herself was also thoroughly questioned about the bus altercation. On cross examination she

admitted that she had testified previously that she had been hit in the stomach. Thus, based on the record, we cannot find that the trial judge abused his discretion in refusing to admit the testimony of the territorial court custodian, on the ground that it would have caused undue delay, waste of time or needless presentation of cumulative evidence.

### IV. *Remittitur*

Pueblo Supermarket also challenges the district court's denial of its motion for a remittitur and argues that the jury's compensatory damages awards for Juliette Berkeley ($30,000) and Kenrick David ($80,-000) were excessive.

 In order to grant a remittitur, this court must find the damages award "so grossly excessive as to shock the judicial conscience." *Edynak v. Atlantic Shipping Inc. CIE. Chambon*, 562 F.2d 215, 226 (3d Cir.1977), (quoting *Russell v. Monongahela*, 262 F.2d 349, 352 (3d Cir. 1958)) *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). An "extremely generous" award must be upheld so long as it is rationally based. *Walther v. Pueblo Supermarket of St. Thomas, Inc.*, 433 F.2d 935, 936 (3d Cir.1970); *Murray v. Fairbanks Morse*, 610 F.2d 149, 153 (3d Cir.1979). We cannot order a remittitur even if "we would have found the damages to be considerably less" had we been the trial court. *Murray*, 610 F.2d at 153.

The record reveals that Berkeley suffered injuries from her fall and continues to have both back and knee problems which were attributed to the fall. Kenrick David was born with a number of serious problems, including a bruised and swollen left arm and shoulder, a separation and probable facture of the elbow joint, an inability to supinate or pronate his left arm, a lack of motion of the fingers and deformities of the elbow. The child was subject to excessive crying and screaming, especially when his mother had to touch his arm to dress him. Other children taunted him and nicknamed him the "Hulk" for the unusual way he continues to hold his left arm.

Given this litany of medical problems, coupled with emotional suffering, we cannot find that the trial court erred in denying Pueblo Supermarket's motion for a remittitur.

### V. *Conclusion*

For the foregoing reasons, we will affirm the $80,000 compensatory damage award for Kenrick David and the $30,000 compensatory damage award for Juliette Berkeley. We will vacate the $50,000 punitive damages award granted to each plaintiff.