CITY OF DALLAS, Appellant,

v.

Michael T. DONOVAN and Victoria Donovan, Individually and as next friends of Erin, Timothy, and Mary Donovan, Appellees.

No. 05–88–00807–CV.

Court of Appeals of Texas, Dallas.

April 3, 1989.

Rehearing Denied May 8, 1989.

Robert S. Dickey, Dallas, for appellant.

Joe Smith, Dallas, for appellees.

Before McCLUNG, BAKER and KINKEADE, JJ.

BAKER, Justice.

The city appeals from an adverse judgment in a negligence lawsuit. In three points of error, the city contends that the trial court erred by admitting hearsay testimony, and that there was no evidence or insufficient evidence to support the judgment. We overrule these points of error and affirm the trial court's judgment.

Michael and Victoria Donovan, individually and on behalf of Erin, Timothy, and Mary Donovan, sued the city because of injuries that they suffered in a collision on January 14, 1984. The accident happened at an intersection in the Dallas city limits. A stop sign, which would have controlled traffic moving in the direction of the Donovan's travel, was down at the time of the accident. A governmental unit is immune from liability for damages based on a claim arising from the removal or destruction of a traffic or road sign by a third party unless the governmental unit fails to correct the situation within a reasonable time after actual notice. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(3) (Vernon 1986) (formerly TEX.REV.CIV.STAT. ANN. art. 6252–19, § 14(12) (Vernon 1970)). The jury found that a third party had removed the stop sign, that the city did have actual notice that the sign was down, that the city failed to replace the sign within a reasonable time after receiving notice, and that this failure was a proximate cause of the collision.

■ In its first point of error, the city argues that the trial court erred in admitting certain testimony of Ladd William Backhaus. He testified that a middle-aged woman drove up to the scene of the accident minutes after the collision. She observed the injured children, and Backhaus could tell that she was affected by what she saw, based on her facial expression and tone of voice. He said that she was very excited or upset, she was emotional, her hands were shaking, and her voice was "crackling." He said that she volunteered the statement that days prior to the accident she had reported to the city that the stop sign was down.

The city objected to the woman's statement, contending that it was inadmissible hearsay, and the city makes the same argument on appeal. The Donovans contend that the statement was admissible as an excited utterance under rule 803(2) of the Texas Rules of Civil Evidence. The pertinent part of the rule states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

TEX.R.CIV.EVID. 803(2).

The city argues that the woman's statement lacks the necessary relationship to the startling event. The city asserts that the statement bears no relationship to the events immediately preceding the accident, the accident itself, or the resulting injuries. In support of this argument, the city cites *American General Insurance Co. v. Coleman*, 157 Tex. 377, 303 S.W.2d 370 (1957). In that case, the Texas Supreme Court held that an injured worker's statement made to a treating doctor was not admissible under the res gestae exception to the hearsay rule. The Court said that the statement was lacking in the requirement that it tend to illuminate or explain the exciting event, and it did not relate to happenings which were causative or descriptive of the accident. *Coleman*, 303 S.W.2d at 373.

We note that the Supreme Court has since suggested that use of the term "res gestae" in this context should be abandoned because it is vague and imprecise and has been used indiscriminately. *See Sanders v. Worthington*, 382 S.W.2d 910, 915 (Tex.1964). In any case, we conclude that *Coleman* does not support the city's position. In our view, the woman's statement about her report to the city concerning the stop sign does tend to explain or illuminate the accident, and it does relate to happenings causative of the accident. The Donovans argued at trial that the city's failure to restore the stop sign after actual

notice was a proximate cause of the collision, and the jury so found. Since the woman's statement is probative of actual notice to the city that the stop sign was down, it does tend to explain the accident, and it relates to happenings causative of the accident. Therefore, we view *Coleman* as supportive of the Donovans' argument that the statement was admissible as an excited utterance.

The city also relies upon *Gulf, Colorado, & Santa Fe Railway Co. v. Southwick*, 30 S.W. 592 (Tex.Civ.App.1895, no writ). This case provides an excellent example of one of the reasons for avoidance of the term "res gestae." *Southwick* involved testimony by two witnesses who said that they heard a train conductor state, "I told those people that those stools would yet be the death of some one." The court held that it was error to allow this testimony because it was not admissible as an opinion of the conductor, as part of the res gestae, or for impeachment purposes. *Southwick*, 30 S.W. at 593. Since the court never explained what it meant by "res gestae," we can only speculate about its meaning as used by the court. The term "res gestae" has been used in determining the admissibility of declarations of mental state, declarations of bodily condition, admissions by parties, various classes of spontaneous exclamations, and other kinds of evidence. *See* 1A R. RAY, TEXAS LAW OF EVIDENCE § 911, at 146–49 (Texas Practice 3d ed. 1980). We will not speculate about which of the above meanings, if any, the *Southwick* court intended. Therefore, we do not view *Southwick* as authoritative on the issue before us, which concerns the admissibility of an alleged excited utterance.

We also observe that the Texas and federal rules on excited utterances are identical, and that Texas adopted the federal rule. *See* FED.R.EVID. 803(2); H. WENDORF & D. SCHLUETER, TEXAS RULES OF EVIDENCE MANUAL 326 (2d ed. 1988). A number of Texas commentators have considered the advisory committee's notes on the federal rules as persuasive. *See, e.g.*, WENDORF & SCHLUETER, *supra*, at 328–29; 33 S. GOODE, O. WELL-BORN, & M. SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE § 803.3, at 579 (Texas Practice 1988). As to the content of statements excepted from the hearsay rule, the advisory committee note states:

> Permissible *subject matter* of the statement is limited under Exception (1) [rule 803(1) on present sense impressions] to description or explanation of the event or condition.... In Exception (2) [rule 803(2) on excited utterances], however, the statement need only "relate" to the startling event or condition, thus affording a broader scope of subject matter coverage.

FED.R.EVID. 803 advisory committee's note (emphasis in original).

In a case applying the federal rule, there was testimony by the plaintiff's father that after the plaintiff fell in the defendant's store, another shopper stated that she had informed "them" about a substance on the floor about an hour and a half ago. The trial court admitted the statement as an excited utterance. The federal appellate court held that the three required conditions for admission had been satisfied: a startling occasion, a statement made before time to fabricate, and a statement relating to the circumstances of the occurrence. The statement was probative of notice of the premises defect, and the court stated that "it is undisputed that [the declarant's] statement directly concerned the 'circumstance' surrounding the occurrence." *See David v. Pueblo Supermarket*, 740 F.2d 230, 234–35 (3d Cir.1984).

■ In the present case, the necessary relationship between the statement and the event is disputed, but we resolve that dispute in favor of the Donovans. We conclude that the statement was clearly related to the event, since it was probative of actual notice and therefore relates to happenings causative of the accident and tends to at least partially explain the accident. We agree with the advisory committee's note that excited utterances are not confined to statements describing or explaining the startling event itself. *See* FED.R.

EVID. 803 advisory committee's note; TEX.R.CIV.EVID. 803(2).

■ The city also argues that the statement was inadmissible because it referred to an incident remote from the startling event in terms of time. We disagree with the premise of this argument. The advisory committee suggests that the time element is important only with respect to the duration of the declarant's state of excitement. *See* FED.R.EVID. 803 advisory committee's note. A statement made while in a condition of excitement theoretically stills the capacity for reflection and prevents fabrication. *See id.; David,* 740 F.2d at 235. One commentator suggests that it is well-settled that declarations concerning incidents occurring before the accident regarding the cause of the accident are admissible. *See* RAY, *supra,* § 918, at 170–72 & n. 51. We conclude that the only requirement concerning time with respect to admission of excited utterances is the necessity that the statement be made while in a state of excitement caused by the startling event. *See* TEX.R.CIV.EVID. 803(2).

■ The city further contends that there must be independent evidence of the incident sought to be proved by the excited utterance. The city notes that the woman's statement was introduced to prove that she had reported the downed stop sign to the city. The city relies on *Richardson v. Green,* 677 S.W.2d 497 (Tex.1984), and *Truck Insurance Exchange v. Michling,* 364 S.W.2d 172 (Tex.1963). This reliance is misplaced. These cases require that there be independent evidence of the *startling event itself. Richardson,* 677 S.W.2d at 500; *Michling,* 364 S.W.2d at 174–75. In this case, the woman's statement was offered to prove an incident distinct from, but related to, the startling occurrence. Therefore, *Richardson* and *Michling* are inapplicable.

We hold that it was not error to admit Backhaus' testimony about the woman's statement. The statement was admissible as an excited utterance. *See* TEX.R.CIV. EVID. 803(2). We overrule the city's first point of error.

In its second and third points of error, the city contends that there was no evidence or insufficient evidence to support the jury's finding that the city had actual notice of the downed stop sign. In reviewing a "no evidence" point, we must consider only that evidence and reasonable inferences drawn therefrom which support the jury's findings, disregarding all contrary evidence and inferences. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex. 1981). We have already upheld the trial court's admission of the woman's statement that she reported the downed stop sign to the city. That statement alone is some evidence of actual notice to the city. There was also circumstantial evidence of actual notice, as will be discussed below. Since there is competent evidence of actual notice, we overrule the city's second point of error.

■ The city also argues that the evidence was insufficient to support the jury's finding that the city had actual notice that the stop sign was down. In its charge to the jury, the trial court defined "actual notice" as "information concerning a fact actually communicated to or obtained by a city employee responsible for acting on the information so received or obtained." There was no objection to this definition, and we view it as substantially correct. *See City of Texarkana v. Nard,* 575 S.W. 2d 648, 651–53 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

In reviewing an "insufficient evidence" point of error, we must consider and weigh all of the evidence, including any evidence contrary to the trial court's judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980) (per curiam). The record shows that Dallas Police Officers David P. Roberts and Steven Ledbetter testified that each patrolled an area including the intersection involved in this case during the first two weeks of 1984. The officers estimated that Dallas police officers would have travelled through the intersection between three and five times daily during that period of time. At the time of trial, neither could recall whether the stop sign was down on or before January 14, 1984, but

they each stated that if it were down, each would have known it. They also testified that police officers have a duty to report downed stop signs to the police dispatcher.

Connie Lou Smotherman was the sanitation supervisor over an area including the intersection. She testified that a city sanitation truck would have passed through the intersection at least once every Tuesday and Friday. She also would have personally passed through the intersection at least once every Tuesday and Friday. She said that it was part of her job, and part of the job of city sanitation workers, to report any downed stop sign.

Sam Wilson was assistant director of the Department of Transportation for the city. He acknowledged that the Police Department and the Sanitation Department are supposed to report downed stop signs to his department. He stated that the Department of Transportation keeps a log listing all telephone calls concerning missing traffic signs. He testified that the logs for the six-week period preceding January 14, 1984, contained no calls concerning the downed stop sign involved in this case. He also admitted that not all telephone calls received actually got logged in.

Four other witnesses testified that the stop sign had been down before the accident. The estimates of these witnesses concerning the period of time that the stop sign was down ranged from "several days" to "quite some time" and "at least a week" to "two, two and a half weeks" to "two to three weeks."

Viewing all of the evidence, including the admissible excited utterance, we hold that the evidence was sufficient to support the jury's finding that the city had actual notice of the downed stop sign. Even without the excited utterance, there was substantial circumstantial evidence of actual notice. The trial court defined "actual notice" as "information ... actually communicated to or obtained by a city employee responsible for acting on the information." It was clearly shown that police officers and sanitation workers are city employees responsible for acting on information concerning a downed stop sign. Four witness-

es testified that the stop sign was in fact down for some period of time prior to the accident. There was evidence that police officers and sanitation workers passed through the intersection during the time periods when others testified that the sign was down. Viewing the evidence in its entirety, there was sufficient evidence to support the jury's finding of actual notice. We overrule the city's third point of error.

We affirm the trial court's judgment.