

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00178-CV

_____

BRADLEY DRAGOO, Appellant

V.

CITY OF FORT WORTH, TEXAS, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-308010-19

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

### I. Introduction

On July 25, 2017, Appellee the City of Fort Worth installed three chevron warning signs for vehicles crossing the Interstate 30 intersection and traveling northbound on Forest Park Boulevard. Chevron signs are "directional signs indicating a curve in the roadway." *City of San Antonio v. Schneider*, 787 S.W.2d 459, 461 (Tex. App.—San Antonio 1990, writ denied).

Half a year later, in December 2017, a police officer who responded to an accident at the site noted that a motorist appeared to have knocked down one of the signs, and in January 2018, Google Maps of the area showed that the northernmost sign, demarcating the end of the curve, was missing.

On April 15, 2018, Appellant Bradley Dragoo wrecked his motorcycle and suffered personal injuries while driving through the area. He sued the City a year later, alleging that it had been negligent when it failed to reinstall the missing sign. Two weeks after Dragoo filed suit, the City's Transportation and Public Works Department (TPW) received a report that the northernmost sign had been knocked down. TPW replaced the sign two days later.

The City filed several motions to dismiss Dragoo's case for lack of jurisdiction, arguing that Dragoo's claims against it were barred by governmental immunity because (1) Dragoo had failed to provide the statutory formal notice of his claims under the Texas Tort Claims Act (TTCA) and therefore had to show that the City had

received actual notice of his claim but had failed to do so; (2) that the City lacked actual notice of the sign's absence; and (3) the City could not have proximately caused Dragoo's injuries based on the missing sign because Dragoo crashed before reaching where the sign would have been.[1] Dragoo did not file a response, and the trial court dismissed Dragoo's claims with prejudice after a hearing.[2]

In two issues, Dragoo now complains that the trial court erred by dismissing his claims because "he has shown sufficient evidence and allegations that the City had actual notice of the missing chevron warning sign and that the missing warning sign proximately caused his injuries." We affirm.

## II. Plea to the Jurisdiction

The TTCA creates a unique statutory scheme in which governmental immunity from suit is waived and abolished to the extent of liability created under the statutory scheme. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (referencing Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001, .021, .025). Governmental immunity is properly asserted in a plea to the jurisdiction. *Id.* at 225–26.

---

[1]In one of its motions, the City also argued that Dragoo had brought forth no evidence of *which* sign had been knocked down, but the City's evidence shows which sign was missing.

[2]Dragoo filed a motion to modify, amend, or correct the judgment to which he attached evidence, but that motion was denied, and Dragoo does not appeal the motion's denial.

## A. Standard of Review

A plea to the jurisdiction challenges whether a plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Mission Consol. ISD v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (stating that a plea to the jurisdiction's purpose generally is to defeat an action "without regard to whether the claims asserted have merit"). Whether a trial court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law that we review de novo. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied) (citing *Miranda*, 133 S.W.3d at 226).

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause, construing the pleadings liberally in the plaintiff's favor and looking to the pleader's intent. *Id.* (citing *Miranda*, 133 S.W.3d at 226). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id.* at 239–40.

We also consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Miranda*, 133 S.W.3d at 227. When the jurisdictional challenge implicates the merits of the

plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

This standard generally mirrors that of summary judgment under Rule of Civil Procedure 166a(c), and after the governmental entity asserts that the trial court lacks subject matter jurisdiction and supports that assertion with evidence, a plaintiff is "require[d], when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

## B. Actual Notice under the TTCA

The supreme court has explained that to secure the TTCA's limited waiver of governmental immunity, a claimant must provide timely notice of a claim to the governmental unit under Section 101.101. *Reyes v. Jefferson Cty.*, 601 S.W.3d 795, 797

(Tex. 2020). The TTCA's notice requirement is a jurisdictional prerequisite to suit. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 62 (Tex. 2019).

Under Section 101.101, a governmental unit is entitled to receive formal notice of a TTCA claim against it not later than six months after the day that the incident giving rise to the claim occurred unless the unit has "actual notice" that the claimant has received some injury or that his property has been damaged. Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a), (c); *see Worsdale*, 578 S.W.3d at 59 (explaining that the TTCA provides a limited waiver of governmental immunity but that, as part of its waiver bargain, it requires prompt notice of a claim to allow governmental units to expeditiously undertake remedial measures that may be required to protect the public).[3]

"Actual notice" requires the governmental unit to have subjective awareness of its fault (responsibility) as ultimately alleged by the claimant. *See Reyes*, 601 S.W.3d at 798 (referencing *Worsdale*, 578 S.W.3d at 77);[4] *Worsdale*, 578 S.W.3d at 59 (citing *Tex.*

---

[3]Prompt notice under these provisions connects a governmental unit's conduct to an injury and "allows for swift abatement of dangerous conditions or practices, fosters early termination of litigation through settlement of meritorious claims, and provides sufficient notice of potential claims to enable governmental entities to make proper budgeting and tax decisions." *Worsdale*, 578 S.W.3d at 64.

[4]In the context of the specific information required to provide "notice of a claim" under Section 101.101, actual notice exists when the governmental unit has knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault in producing or contributing to the specific death, injury, or property damage; and (3) the identity of the parties involved. *Cathey v. Booth*, 900 S.W.2d 339, 340–42 (Tex. 1995) (holding in medical-malpractice case that county hospital did not

*Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 343–48 (Tex. 2004)). Subjective awareness does not occur just because an accident is investigated as part of routine safety procedures. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018).

The court recently revisited and reaffirmed its "actual notice" analysis in *Worsdale*, in which two people were badly injured when their motorcycle collided with a large dirt mound that was blocking an unlit asphalt road in the City of Killeen. 578 S.W.3d at 60. Within days of the crash, the Killeen police department dispatched an officer to conduct an accident investigation. *Id.* The officer photographed the accident site and dirt pile; constructed a scale diagram of the scene using 3D laser-mapping technology; observed that at the time of the crash there were no signs, barricades, or cones present to indicate that the roadway was closed to traffic; and spoke with several officials from various city departments as part of the investigation, including the deputy city attorney and the city inspector, with regard to responsibility for road maintenance and warning signs and whether the city had abandoned the road. *Id.*

The city officials acknowledged that the road had been obstructed for at least two years but said that barricades and warning signs had not been erected before the accident because of an ongoing dispute with the county over jurisdiction and road-maintenance responsibility. *Id.* The deputy city attorney's investigation confirmed the

have actual notice from medical records that did not convey to the hospital its possible culpability).

7

city's annexation of the road but not its legal abandonment of the road, *id.* at 67, and two days after the accident, the city removed the dirt pile and installed permanent road-closure signs and barricades at the police department's request. *Id.* at 60. After the two people died of their injuries from the accident, their relatives sued the city under the TTCA and argued that despite their having failed to give formal statutory notice to the city, the city had received actual notice. *Id.* at 60–61. The city filed a plea to the jurisdiction, which the trial court denied but the court of appeals reversed, relying on *City of Dall. v. Carbajal*, 324 S.W.3d 537 (Tex. 2010).[5] *Id.* at 61.

The supreme court examined several of its prior cases, including *Carbajal* and *Tenorio*,[6] before reiterating that, ultimately, the governmental unit "need only achieve

---

[5]In *Carbajal*, in which the plaintiff sued the city for injuries she sustained after driving into an unbarricaded gap on an excavated road, the court held that a routine safety investigation like a police report is insufficient to provide actual notice. 324 S.W.3d at 537–39. The court held that the police report did not provide the city with subjective awareness—actual notice—of fault "because it did not even imply, let alone expressly state, that the [c]ity was at fault." *Id.* at 537, 539. The court reasoned, "When a police report does not indicate that the governmental unit was at fault, the governmental unit has little, if any, incentive to investigate its potential liability because it is unaware that liability is even at issue." *Id.* at 539.

[6]In *Tenorio*, the plaintiffs' motorcycle was hit head-on by a vehicle that had been pursued by police until its driver entered Interstate Loop 410 going the wrong way, at which point the police discontinued pursuit. 543 S.W.3d at 774. The surviving plaintiff sued the city, alleging that the police had been negligent in initiating, continuing, and failing to terminate the high-speed chase and that the city had actual notice of the claims. *Id.* The city responded that it had not had actual notice that it was at fault and supported its plea to the jurisdiction with sworn witness statements and police reports about the collision. *Id.* The court held that evidence that the vehicle pursued by the police had been in a collision is not, by itself, sufficient to raise a fact question about the city's subjective awareness that it was in some manner at

8

subjective awareness of fault" as alleged by the claimant, i.e., that the plaintiff's pleadings must demonstrate "subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted," as compared to merely collecting statistics. *Id.* at 65, 73 (noting that statistics kept by governmental units are "knowledge, not notice"). "The critical inquiry is the governmental unit's actual anticipation of an alleged claim rather than subjective confirmation of its actual liability." *Id.* at 68.

The pleadings in *Worsdale* did not allege facts about actual notice, but in response to the city's plea to the jurisdiction, the plaintiffs responded with evidence that the city did not dispute. *Id.* at 66. The record established that almost immediately after the accident—and well within the six-month formal notice deadline under the TTCA—the city had been subjectively aware of allegations that the road condition and absence of warning signs were contributing factors to the accident and that the city had been responsible for maintaining the road. *Id.* at 66–67. The court distinguished *Carbajal* by observing that whereas the evidence of actual notice in that case was limited to a one-page report that disclosed only that a vehicle was driven into a street that lacked proper barricades, there had been in *Worsdale* a "wide-ranging post-accident investigation" showing "an effort among various [c]ity departments to

---

fault for the collision. *Id.* at 778 ("[N]othing in the crash report, witness statements, or case report indicate, either expressly or impliedly, that the SAPD subjectively believed its officers acted in error by initiating or continuing the pursuit such that they were in some manner responsible for the injuries."). Subjective awareness of *potential* fault is insufficient. *Id.* at 779.

track down whether the [c]ity was charged with maintaining the road and remediating the hazard" and "firmly establish[ed] the [c]ity's knowledge connecting its alleged ownership and control of the road to the road conditions identified as contributing to" the deaths. *Id.* at 67. Further, the evidence of subsequent remediation, while inadmissible to prove liability, was admissible to prove ownership, control, and notice. *Id.* at 68.

Notwithstanding "actual notice" of the TTCA claim itself, at issue in this case is another TTCA "actual notice" provision. Under Section 101.060(a)(3), the TTCA does not apply to (that is—governmental immunity is retained for) a claim arising from "the removal or destruction of a traffic or road sign, signal, or warning device by a third person *unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice*." Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(3) (emphasis added); *see In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (orig. proceeding) (noting that Section 101.060 acts only as a limitation on the government's waiver of immunity in some situations involving the absence, condition, malfunction, or removal of a traffic control device and does not create a cause of action separate and apart from a premises defect cause of action); *Tex. Facilities Comm'n v. Speer*, 559 S.W.3d 245, 251 (Tex. App.—Austin 2018, no pet.) (explaining that immunity is retained subject to the limitations set out in Section 101.060(a)); *Tex. Dep't of Transp. v. Ramming*, 861 S.W.2d 460, 464 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (stating that "Sections 101.022 [the TTCA provision setting out the duty owed in

10

claims arising from premise and special defects] and 101.060, read together, establish the duty owed by the State to a plaintiff who sues *under a premises liability claim involving a traffic signal*" but noting that a traffic-signal claim is not always a premises liability claim).

Subsection (a)(3), based on its plain language, "expressly applies whenever a third person removes or destroys a traffic sign or signal." *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 328–29 (Tex. 2002) ("[S]ubsection (a)(3) imposes a duty on the [governmental entity] to correct a sign's *removal or destruction* by a third person upon receiving *actual notice*."). Whether a governmental unit has "actual notice" about a sign's removal or destruction by a third party is a fact question. *See id.* at 327.

To receive "actual notice" of the removal of a sign by a third party, information concerning the sign must be actually communicated to or obtained by an employee responsible for acting on the information. *Montgomery Cty. Precinct 1 v. Reed*, No. 09-06-00402-CV, 2006 WL 3823897, at *2 (Tex. App.—Beaumont Dec. 28, 2006, no pet.) (mem. op.) (citing *City of Dall. v. Donovan*, 768 S.W.2d 905, 908 (Tex. App.—Dallas 1989, no writ), and *Martinez v. City of Lubbock*, 993 S.W.2d 882, 886 (Tex. App.—Amarillo 1999, pet. denied)).

## C. The Record

### 1. Dragoo's Pleadings

In his original petition, Dragoo alleged that on or about April 15, 2018, he had been riding his motorcycle below the posted speed limit on North Forest Park Boulevard, near or around Interstate 30. He drove up a hill, and "the roadway dramatically curved to the right down the backside of the hill without warning, as the previously installed chevron sign indicating the severe curve was not standing." Dragoo crashed into the median and his leg muscles were severed by a piece of metal, "which once held the aforementioned chevron sign warning of impending curve," and which was sticking up from the ground.

Dragoo asserted that the City "had actual knowledge that the aforementioned chevron warning sign was down as the sign was either knocked down in a prior motor vehicle incident, Case ID 17-118644, or was noted to be down" as a result of that incident, which occurred four months prior to Dragoo's accident, and that after the prior incident, the City had not replaced the downed sign. He further alleged that the sharpness of the curve, without appropriate signage, presented an unexpected and unusual danger to ordinary roadway users and that there had been multiple motor vehicle incidents at the same location before and after his accident.

### 2. The City's Motions to Dismiss and Jurisdictional Evidence

The City filed several motions to dismiss and attached jurisdictional evidence. In its first and second motions, the City complained that Dragoo had failed to give it

written notice of the claim within six months (180 days) of the incident giving rise to the claim and therefore had the burden to prove that the City had received actual notice of the claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.101(a), (c). To its second motion, the City attached the affidavit of Deirdre O'Neal-Mills, a Senior Property and Casualty Adjuster in the City's Risk Management Division, who averred that no written notice of the claim was given prior to service of a copy of Dragoo's petition and that there was no evidence of actual knowledge on the part of the City concerning Dragoo's claim or that the accident was caused by the City. The City also attached a copy of the police report from Dragoo's accident.

The police report showed that the crash occurred on April 15, 2018, at 1:34 p.m. The officer's narrative states, "Unit 1 was northbound in the 2100 Block of N Forest Park Blvd when the rider lost control and struck the north side curbline." A graphic marked "Not To Scale" showed the location of the accident on the roadway at the midpoint of the road's curve. The police report did not indicate why Dragoo lost control of his motorcycle.

In its third motion, the City argued lack of causation, asserting, "To the extent [Dragoo] is claiming that his alleged personal injuries resulted from the absence, condition or malfunction of a traffic control device [under Civil Practice and Remedies Code Section 101.060(a)(2)], that claim must fail because the sign in question was located *after* the area where [he] allegedly lost control of his motorcycle," and "it was the last of three separate signs alerting motorists to approaching road

13

conditions," defeating causation. [Emphasis added.] The City stated, "There is no way that the absence of the third sign, the one which [Dragoo] claims injured his knee, can be the cause of the accident because it would have been located after the point at which [Dragoo] lost control of his vehicle."

To its third motion, the City attached three exhibits. Exhibit A was a Google Maps photograph of the first two chevron signs in the curve. Exhibit B was a Google Maps photograph of the roadway with no third sign at the curve's conclusion. Exhibit C was the affidavit of Marisa Conlin, a TPW Engineering Manager who had worked in TPW for 19 years and had "manage[d] the maintenance throughout the City" since June 2019 as to signs, markings, street lights, and traffic signals. Conlin averred that she had reviewed the City records related to the three chevron signs located in the 2100–2300 blocks of northbound Forest Park Boulevard, which were placed there on July 25, 2017; that "[t]he first report the City received of a missing chevron sign was May 28, 2019"; that "[t]he chevron sign [that had been] reported knocked down was the third sign, or the northern[]most sign of the three installed"; and that there was no indication that all three signs were missing on April 15, 2018. To her affidavit, she attached the City's business records relating to the sign as Exhibit C-1.

Exhibit C-1 contained a "sign ticket" for 2000 Forest Park Blvd/I-30, dated July 25, 2017, which showed that three chevron signs were installed that day. Exhibit C-1 also contained an aerial photograph denoting where the signs were installed: (1) at

14

the intersection; (2) 100 feet away, at the curve's midpoint; and (3) 100 feet farther, at the end of the curve. Exhibit C-1 also contained a service request summary report created on May 28, 2019, when a citizen called in about the sign, requesting service; it was logged at 8:16 a.m. The service request was given an "Emergency" priority level.

The City also filed a "supplement" in which it argued that the City had not received actual notice that the sign had been destroyed or removed until after Dragoo's accident, notwithstanding the December 2017 accident report that a chevron sign in the median on the relevant stretch of Forest Park Boulevard was down. *See id.* § 101.060(a)(3). The City contended that it had brought forth evidence "showing that its first actual notice that the chevron sign at issue was reported removed or destroyed" was after the date of Dragoo's accident and again argued that it would have been impossible for the missing sign to have caused his fall and injuries.

To the supplement, the City attached a copy of the December 16, 2017 police report of a crash referenced by Dragoo in his original petition, bearing case identification number 17-118644. That report stated that the crash occurred at 4:18 p.m. at the 2000 block of North Forest Park Boulevard and 2300 I-30 West. The "not to scale" graphic showed the location of the accident on the roadway, including a downed sign, and the officer's narrative states, "Unit 1 was heading northbound on 2000 N Forest Park Blvd. 2100 N Forest Park is a curved road. Unit 1 collided into the median and spun out of control facing southbound. Unknown if Unit 1 collided into street sign. Unit 1 driver relayed that sign was already down."

15

The City also attached to its supplement a copy of Dragoo's uncertified testimony from his January 31, 2020 deposition. In his deposition, Dragoo testified that he did not see the two earlier chevron signs indicating the curve. He stated, "I did not see those because I wasn't looking for them when the road is going straight, I'm not going to look for a curve sign when I'm going straight." Dragoo marked on an exhibit where the curve started ("where the sidewalk ends") and marked where he said the accident occurred, which was adjacent to the location of where the northernmost chevron sign would have been. He stated that the accident occurred "from the moment the road started to take a corner, milliseconds after that was when [he] went down." He stated that the accident happened "after the second [chevron sign]" but could not verify whether any of the signs were there. He stated, "[T]he only thing I can verify is that there w[ere] no chevron signs on the corner itself except for the one that used to be there that went inside me."

Dragoo did not file a response to any of the City's motions.

**D. Analysis**

The evidence is undisputed that Dragoo did not provide formal notice of his TTCA claim within six months after his April 15, 2018 accident; therefore, he had to demonstrate through his pleadings or jurisdictional evidence that the City had had actual notice of his claim. *See id.* § 101.101(a), (c). Dragoo, however, pleaded only that the City had actual knowledge that the sign was missing, not that the City had actual notice of his claim, and the City brought forth evidence from the senior

16

property and casualty adjuster in its risk management division that no written notice of the claim had been received prior to service of a copy of the lawsuit. Dragoo does not challenge this ground on appeal. *See Tenorio*, 543 S.W.3d at 779 (no actual notice of claim); *Carbajal*, 324 S.W.3d at 539 (same); *cf. Worsdale*, 578 S.W.3d at 67–68 (actual notice of claim).

Further, both parties focus on Section 101.060(a)(3) in this appeal. Neither party disputes, and the City's evidence shows, that the sign was removed or destroyed by a third person and not by the City, meaning that the City had to have actual notice for its immunity to be waived. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.060(a)(3); *Gonzalez*, 82 S.W.3d at 328–31. Although Dragoo alleged that the December 2017 police report provided the City with "actual knowledge" that the sign was missing, he did not allege that the police were responsible for reporting the missing sign to TPW for replacement, and there is no evidence that they did so.[7] *See Tenorio*, 543 S.W.3d at 776 (noting that subjective awareness does not occur just because an accident is investigated as part of routine safety procedures); *Reed*, 2006 WL 3823897, at *2 (requiring information about a sign to be actually communicated to or obtained by an

---

[7]Dragoo states in his appellate brief's factual recitation that Conlin testified that the City's sign department did not communicate with the police department regarding signs knocked down during motor vehicle incidents and that the City instead relied on citizen complaints regarding missing signs, referencing Conlin's deposition that was attached to his postjudgment motion to modify, which the trial court denied and the denial of which he does not appeal. *See* Tex. R. App. P. 38.1(g) (stating that in a civil case, the court will accept as true the facts stated unless another party contradicts them).

17

employee responsible for acting on the information for a city to receive "actual notice" of a third party's removal of a sign). There was no evidence that such knowledge, reporting, and notice was required to be shared between the City's various departments, but the City's jurisdictional evidence showed that within two days of the citizen's complaint (15 days after Dragoo filed suit) TPW replaced the sign.

Finally, the trial court could have concluded—based on photographic evidence of the signs' initial locations when placed in 2017 and their locations in December 2019 (including the northernmost sign's absence) and on Dragoo's testimony that he had failed to notice the first two signs—that, even if the City had received actual notice about the third sign's absence, there was no causation between its absence and Dragoo's accident. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (stating that a governmental unit is liable for personal injury caused by a condition of real property if it would, were it a private person, be liable to the claimant according to Texas law). Because the trial court did not err by dismissing Dragoo's case for lack of jurisdiction, we overrule both of Dragoo's issues.

### III.  Conclusion

Having overruled both of Dragoo's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  September 30, 2021

18